1  JEANE HAMILTON (CSBN 157894)
   U.S. Department of Justice
2  Antitrust Division
   450 Golden Gate Avenue
3  Box 36046, Room 10-0101
   San Francisco, CA 94102
4  Jeane.hamilton@usdoj.gov
   Telephone: (415) 934-5300
5
6  Attorney for the United States

7              UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9                    OAKLAND DIVISION

10

11

12  UNITED STATES OF AMERICA,          Case No. CR 4:12-00082 PJH

13                  Plaintiff,         **UNITED STATES' SENTENCING**
                                       **MEMORANDUM AND MOTION FOR**
14                                     **DOWNWARD DEPARTURE PURSUANT**
       v.                              **TO U.S.S.G. §5K1.1**
15
16  HILTON WONG,                       Date: September 6, 2017
                                       Time: 2:30 p.m.
17                  Defendant.         Court: Hon. Chief Judge Phyllis J. Hamilton

18

19

20          The United States respectfully requests that this Court sentence defendant Hilton Wong

21  to (1) serve eight months of custody, based on the government's motion for a downward

22  departure of thirty-five percent from the low end of the Guidelines range for substantial

23  assistance; (2) serve three years of supervised release; (3) pay a criminal fine of $7,500; (4)

24  pay restitution of $40,800; and (5) pay a $100 special assessment.  This sentence is consistent

25  with the parties' Fed. R. Crim. P. 11(c)(1)(A) and (B) plea agreement.

26  //

27  //

28  //

**BACKGROUND**

The defendant, Hilton Wong, participated in the bid-rigging conspiracy at the Contra Costa County foreclosure auctions for approximately 17 months from August 2009 until January 2011.[1]  The defendant entered the conspiracy in 2009, when he partnered with Dominic Leung, another defendant in this investigation.[2]  Leung taught the defendant how to participate in trustee auctions.  The defendant attended the auctions regularly and began participating in rounds almost immediately.  Profits from the rounds were important to the defendant, who made notes of every round in which he participated, including the property address and identity of the bidders in the rounds.  The defendant maintained these records until he reconciled the information with Leung, and then shared the round profits or settled any debts.  Although Leung provided the cash for payoffs, it was the defendant who personally made the payments.  It was also the defendant who collected round payments due to himself and Leung.  As part of his role as debt collector, the defendant visited Mike Marr's office several times to reconcile the previous month's round payoffs and either accept money for Leung's and the defendant's participation in the conspiracy, or provide Leung's check to Marr for any amounts due.[3]  All of these acts contributed to the ongoing success of this scheme.

Initially, the defendant received thirty percent of every round payment.  After bringing in his own clients and their money, the defendant re-negotiated the split and kept fifty percent of the round payments.  The defendant did not share the round payoffs with his clients.  In total, the defendant participated in 121 rigged auctions and purchased 30 properties worth approximately $2.8 million.

Defendant was initially interviewed by the FBI in January 2011; he falsely denied participating in bid rigging.  PSR ¶ 14.  Defendant was re-interviewed pursuant to the

---

[1] The government concurs with the description of the conspiracy contained in the Presentence Report (PSR).

[2] *United States v. Dominic Leung*, 14-CR-00083; he plead guilty to bid rigging in Contra Costa County on October 26, 2016.

[3] As this Court is aware, Marr was found guilty for bid rigging in Contra Costa and Alameda counties on June 2, 2017.  *United States v. Michael Marr*, 14-CR-00580.

cooperation provision of his plea agreement on April 25, 2012.  He corroborated other witnesses' accounts, but provided no new evidence or leads.

Defendant entered his original guilty plea to one count of mail fraud and one count of bid rigging on March 14, 2012.  On January 17, 2017, his plea was withdrawn by stipulation, and the Honorable Judge Westmore presided over a change of plea hearing in which defendant entered a guilty plea to the bid-rigging count only, pursuant to a revised plea agreement.  Minute Entry, Doc. No. 39.  The Court adopted Judge Westmore's Report and Recommendation accepting defendant's guilty plea.  Order, Doc. No. 42.

## ARGUMENT

**A.    Sentencing Guidelines Calculations**

### 1.    Criminal History

In Paragraph 12 of the Plea Agreement, the parties agree that defendant's Criminal History Category is determined by the Court.  The Presentence Report (PSR) calculates the defendant's Criminal History Category as I.  PSR ¶ 43.  The United States agrees.

### 2.    Offense Level

The PSR calculates the total offense level as 13, which is consistent with the plea agreement.  PSR ¶ 39.  This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million (the parties agree the affected volume of commerce is $2,800,000), and an additional reduction of two points for acceptance of responsibility.  U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 3B1.2(b), 3E1.1(a) (U.S. Sentencing Comm'n 2010).

Under the Sentencing Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from 12 to 18 months of imprisonment.

### 3.    Fine and Restitution

The PSR calculates a fine range of $28,000 to $140,000.  PSR ¶ 82; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000).  In Paragraph Nine of the plea agreement, the government agrees to recommend a fine

range between $7,500 and $75,000.  This fine range was initially agreed to by the parties in the original agreement based on the application of the fraud Guidelines and was carried over to the revised plea agreement.  For the reasons discussed below, the government recommends a $7,500 fine, at the low end of this range.  In addition, the defendant has agreed to pay restitution of $40,800.  PSR ¶ 84.

In its order accepting Judge Westmore's report and recommendation regarding defendant's guilty plea, the Court accepted defendant's guilty plea but "reserve[d] ruling on whether it will accept the plea agreement, if any, pending receipt of the presentence report."  Order, Doc. No. 42.  Because the plea agreement is consistent with the Guidelines calculation in the PSR, the government will make a motion for the Court to accept the plea agreement at the sentencing hearing.  The government will also move to dismiss the remaining count in the Information.

**B.    Basis for Downward Departure for Substantial Assistance**

The government moves, pursuant to Section 5K1.1 of the Guidelines, for a downward departure for substantial assistance to the investigation under the Rule 11(c)(1)(B) plea agreement in this case.  The government recommends a thirty-five percent reduction from the low end of the Guidelines range of 12 months, resulting in a sentence of approximately eight months.  This recommendation is based on a number of factors.  First, a significant consideration is the timing of defendant's decision to plead guilty and cooperate.  Defendant pleaded guilty in 2012, in the middle of the investigation and more than a year before any of his coconspirators were indicted by the grand jury.  More than a dozen individuals decided to plead guilty and cooperate after defendant's guilty plea.  Defendant's plea likely had an important effect on his employer's decision to plead guilty and cooperate in the investigation as well.

The government's recommendation is also based on the extent and value of the information provided by defendant.  Defendant sat for a debrief interview with the government in which he provided corroborating information regarding the operation of the conspiracy, authenticated various notes and round sheets, and provided an account of various targets' conduct in furtherance of the bid-rigging conspiracy. This interview did not, however, result in

any new investigative leads or the discovery of new evidence.  The defendant was also interviewed more recently as a potential trial witness, but ultimately he was not called to testify.

Based on the foregoing, a thirty-five percent reduction for substantial assistance is appropriate.

## C.    Sentencing Recommendation

The government's recommendation of eight months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.S.C. § 3553.  The most compelling factors weighing in favor of the recommendation are the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and the need to afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

The defendant fully participated in the bid-rigging conspiracy in more than 121 instances, which impacted more than 2.8 million dollars of commerce.  While participating in those 121 rounds, the defendant garnered $40,800 in profits.  Further complicating the defendant's value as a cooperator is the fact that he was one of several individuals who were not truthful when initially questioned about the conspiracy by the FBI.

However, an assessment of the history and characteristics of defendant should take into account certain mitigating factors previously identified by the Court for similarly situated individuals, especially the defendant's decision to accept responsibility and cooperate in the investigation and his willingness to testify at trial

Based on these circumstances, a sentence greater than eight months is not necessary in light of the factors articulated in 18 U.S.C. § 3553.

//

//

//

//

//

//

//

US' SENT'G MEMO.
No. CR 12-00082 PJH

5

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court sentence defendant Hilton Wong to (1) serve eight months of custody; (2) serve three years of supervised release; (3) pay a fine of $7,500; (4) pay restitution of $40,800; and (5) pay a $100 special assessment.

Dated: August 30, 2017                                        Respectfully submitted,


                                                        _____
                                                              /s/
                                                        JEANE HAMILTON
                                                        United States Department of Justice
                                                        Antitrust Division